# ÆTNA FIRE INS. CO. v. CITY OF READING.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 1, 1888—Decided March 26, 1888.

1. The provisions of § 17, act of April 4, 1873, P. L. 20, do not consti-
tute such a contract with a foreign insurance company, becoming
authorized under said act to transact business in this state, as will pre-
·vent the taxation of such companies in the future.
2. Section 17, of said act of 1873, prohibiting cities, counties and muni-
cipalities from imposing any license fee or tax upon insurance compa-
nies or their agents, is repealed as to cities of the fourth, fifth, sixth
and seventh classes, by pl. iv., § 2, article VII., act of May 24, 1887,
P. L. 204.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 366 January Term 1888, Sup. Ct.; court below, No. 72
January Term 1888, C. P.

On January 19, 1888, in an action wherein the city of
Reading, a city of the fifth class, was plaintiff, and the ·Ætna
Fire Insurance Co. was defendant, a case stated was filed
which was as follows :

And now, January 3, 1888: It is hereby agreed by and
between the parties to the above suit that the following case
be stated for the opinion of the court in the nature of a special
verdict :—

The city of Reading passed the ordinance, a copy of which
is hereto attached, and made part of this case stated, under
and in pursuance of the provisions of the act of May 24, 1887,
relating to cities.

The defendant is an insurance company of the state of
Connecticut, duly authorized under the laws of Pennsylvania
to do business in the state of Pennsylvania, and with an
agency established in the city of Reading.

If the court be of opinion that the defendant is legally liable
to pay the license tax by said ordinance imposed, then judg-
ment to be entered for plaintiff for fifty dollars; but if not,

then judgment to be entered for the defendant: The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

The ordinance attached to the foregoing case, was passed on September 29, 1887, and so far as was material was as follows:

Section 1. That every person, firm, or corporation hereinafter mentioned shall, within sixty days from the approval of this ordinance, and annually thereafter before the first day of July in each and every year, apply to the city clerk for a license, which shall expire on the thirtieth day of June next following; and the city clerk shall issue such license upon payment to the city treasurer of the respective sums for the same as provided in the ordinance. . . . .

Section 2. The amount to be paid to the city treasurer shall be as follows: . . . . . "Every fire insurance company or agency shall pay the sum of fifty dollars."

On February 23, 1888, the court, ERMENTROUT, J., filed the opinion and decree:

The defendant is a corporation chartered under the laws of the state of Connecticut. It has complied with the provisions of the act of April 4, 1873, P. L. 20, entitled "An act to establish an Insurance Department." It has an agency in the city of Reading.

Section 17 of said act provides as follows: "That it shall not be lawful for any city, county, or municipality to impose or collect any license fee or tax upon insurance companies, or their agents authorized to transact business under this act."

By the act of assembly of May 24, 1887, P. L. 204, entitled "An act dividing cities into seven classes," etc., it is provided in article VII., section 2, pl. iv., page 219, that every city of the fourth, fifth, sixth, and seventh classes shall have power "to levy and collect for general revenue purposes, an annual license tax on insurance companies, or agencies, and regulate the collection of the same."

Under this power, the city of Reading, a city of the fifth class, passed an ordinance for general revenue purposes on the 29th September, 1887. The nineteenth clause of this ordinance provides as follows: "Every fire insurance company or

agency shall pay the sum of fifty dollars." Under this ordinance, the city of Reading claims authority to levy and collect such tax from the defendant. To test the city's right so to do, this case stated has been framed.

The city contends that the said section 2, clause iv., of article VII., act of 1887, repealed by implication section 17 of the act of 1873, and therefore the city has the right. The defendant contends :—

1. There is no repeal by implication.

2. There can be no repeal; that the act of 1873 and its acceptance thereof constitutes a contract between it and the state, and that by the provisions of article 1, section 10, constitution of the United States, no state can pass any law impairing the obligation of contracts.

An examination has convinced us that the decisions of the Supreme Court are against the contention of the defendant, as to both these points.

1. The clause of the act of 1873 exempting from taxation is general in its terms, applicable to foreign and domestic companies alike. The act of 1887 is equally general in its terms.

The act of 1887 is affirmative; it introduces a new rule upon the subject; the repugnancy between the old and new clauses is total and manifest. By no proper construction can they stand together, or be consistently reconciled.

Under the legal principles laid down in Sifred v. Commonwealth, 104 Pa. 180 ; Johnston's Estate, 33 Pa. 511, the new works a repeal of the old. There are two decisions especially applicable and decisive of this question. In the act of assembly chartering the Iron City Bank of Pittsburgh, it was provided, " that its capital stock should not be subject to taxation for any other than state purposes." Afterwards, the legislature by act of assembly authorized the city of Pittsburgh to tax all banks. It was held that the latter act repealed the former by implication : Iron City Bank v. Pittsburgh, 37 Pa. 340.

Under the act of April 10, 1879, P. L. 16, relating to building associations, the Bourgignon Building Association filed a certificate of acceptance of its provisions, thus releasing it from taxation under existing laws. Subsequently the general revenue act of June 7, 1879, was passed, subjecting building associations to the payment of tax upon their capital stock.

It was held that "there was a repeal; that an act of assembly imposing a tax, which is necessarily and certainly inconsistent with a preceding act exempting from taxation, repeals the former act:" Bourgignon Building Association v. The Commonwealth, 1 Penny. 193.

2. We see nothing to justify the holding of the existence of any such contract relation between the defendant and the state. The defendant does not hold its corporate powers by virtue of a charter from this state, and the act of 1873 neither strengthens nor impairs its corporate powers. It in no way interferes with the charter. Nor do we see anything to indicate any contract, which a legislature may not impair. The act simply regulates the manner and conditions under which such corporations may from time to time be licensed, or permitted to do business in the state, if they so choose. It repealed the previous regulations of the act of 1868. As was said in Thorne v. Travelers Insurance Co., 80 Pa. 28, " there can be no doubt of the constitutional power of the legislature to prescribe the conditions under which a foreign corporation shall transact business in this state." The act of 1868 did this, no one contending that, by any of its provisions, it created a contract relation between such corporation and the state, although the seventh section of the act contained the similar provision of a tax of three per cent. on premiums, found in the act of 1873. The repeal shows the deliberate purpose of the state to make no surrender of its right of taxation. It created, abolished, and again imposed its regulations. The act of 1873, in all its provisions, simply prescribes the conditions under which the foreign corporation may do business, the legislature again asserting its right of taxation in section 10, imposing the three per cent. on premiums, and, whilst in section 17 prohibiting a city from levying any tax, it does not prohibit itself from so doing. Nowhere is there any surrender by the state, either of the right of taxation, or of its power to relieve or change the character of such taxation, or of its power to delegate its right to the city. No such surrender is expressed, and none can be implied. In Durach's Appeal, 62 Pa. 494, it is said, "the municipal government is really but a branch of the government of the state, and whatever powers of taxation the legislature possesses, they may lawfully grant or delegate to

such body." It follows, therefore, that such power of taxation, not having been surrendered, and having been delegated to the city of Reading by the act of 1887, defendant is liable to the tax imposed by the ordinance.

The authorities of our Supreme Court upon the question, are clear and numerous. The Bank of Easton v. Commonwealth, 10 Pa. 449, is a carefully considered case, on all fours with the present. The same constitutional question was raised. The bank, under the act of March 25, 1824, was made a corporation "upon the conditions thereinafter specified." By the twenty-fourth section, P. L. 70, a tax of eight per cent. of the whole of the dividends was imposed. By a subsequent act, this rate was increased. The latter act was held constitutional, and it was held that the former "was intended as a restraint upon the banks to limit their power and to prescribe the mode in which their business should be conducted; and not as a pact by which the government undertook to relinquish any power inherent in it, or confer immunities beyond those expressly given;" that the tax clause "is nothing more than a simple declaration of the tax then to be paid by the institution, and we there look in vain for the slightest intimation of an agreement or even understanding between the parties, that this tax should not be increased during the existence of the charter. To deduce from premises so insufficient, a consequence of such magnitude, would be a gross violation of the wholesome principle that an abandonment of the power of taxation is only to be established by clearly showing this to have been the deliberate purpose of the act." These principles were affirmed in Bank of Pennsylvania v. Commonwealth, 19 Pa. 144, in a vigorous opinion by Chief Justice BLACK; again approved in an opinion of Justice WOODWARD, in making a general review of the authorities, in Iron City Bank v. City of Pittsburgh, 37 Pa. 345; also in Germania Life Insurance Co. v. Commonwealth, 85 Pa. 515; and the case of Bourgignon Building Association v. Commonwealth, 1 Penny. 193, is also directly decisive of this very question, as the reading of the opinion of the court below and Justice GREEN's opinion will conclusively show.

We therefore, in accordance with the terms of the case stated, direct judgment to be entered for plaintiff for $50.

Judgment having been entered in accordance with the foregoing order, the defendant took this writ assigning the said order as error.

*Mr. Henry M. Hoyt* and *Mr. George F. Baer*, for the plaintiff in error:

The act of April 4, 1873, P. L. 20, to establish an insurance department, specially designated the terms upon which foreign insurance companies should do business in this state, the taxation to which they should be subjected, the basis upon which it should be ascertained, and by § 17 provided: "That it shall not be lawful for any city, county or municipality to impose or collect any license fee or tax upon insurance companies or their agents authorized to transact business under this act." Insurance companies may be classified for purposes of taxation into foreign and domestic: Germania L. Ins. Co. v. Commonwealth, 85 Pa. 513. In that case this court held that the act of April 24, 1874, P. L. 68, did not repeal the act of April 4, 1873, but left foreign insurance companies exposed to the special provisions of the latter act. Is the act of 1873 repealed by pl. iv., § 2, article VII., of the act of May 24, 1887, P. L. 217?

1. The legislature and this court having classified insurance companies for purposes of taxation into foreign and domestic, it is evident there is no repeal by necessary implication. There is no such positive repugnancy between the provisions of the new and of the old that they cannot stand together: Sifred v. Commonwealth, 104 Pa. 182; McCall v. Smith, 1 Black (U. S.) 459; Easton Bank v. Commonwealth, 10 Pa. 442. Iron City Bank v. Pittsburgh, 37 Pa. 348, was decided upon the expressed grounds that the bank took its charter subject to the general bank act of 1850, and by that act the power "to alter, revoke or annul" was expressly reserved. That the law does not favor repeals by implication is a very old rule: Brown v. Commissioners, 21 Pa. 43; Bounty Accounts, 70 Pa. 96; Queen v. Champneys, L. R. 6 C. P. 394. Surely, the special scheme for the taxation of foreign insurance companies, as set up in the act of 1873, was not repealed by necessary implication in a general scheme for the government of cities, set up in the act of 1887.

2. Section 1, article XXIII., Act of 1887, repeals all laws or parts of laws relating to the incorporation and government of any of the cities of the commonwealth, inconsistent or supplied by the provisions of that act. This express repeal cannot be enlarged by implication; expressio unius est exclusio alterius. Where a revisory statute expressly declares what effect it is to have on an earlier statute, the doctrine of repeal by implication does not apply: Patterson v. Tatum, 3 Saw. 164; Lewis v. Stout, 22 Wis. 234; State v. Pollard, 6 R. I. 290; State v. Morrow, 26 Mo. 131; Crosby v. Patch, 18 Cal. 438; Payne v. Connor, 3 Bibb 180; State v. Cunningham, 72 N. C. 469; Purcell v. Ins. Co., 49 N. Y. (Sup. Ct.) 383.

*Mr. William J. Rourke, City Solicitor,* for the defendant in error:

1. The act of 1873 is general in its terms and applicable alike to foreign and domestic companies. The act of 1887 is also general. Both these statutes, in the sections adverted to, are upon the same subject matter, taxation; the earlier containing a clause of exemption, the later a clause of imposition. In that respect, they are entirely repugnant and inconsistent, and therefore cannot stand together: Easton Bank v. Commonwealth, 10 Pa. 448; Bourgignon B. A. v. Commonwealth, 1 Penny. 193; Johnston's Est., 33 Pa. 511; Gwinner v. Railroad Co., 55 Pa. 126; Iron City Bank v. Pittsburgh, 37 Pa. 340.

2. But aside from this, it is never to be presumed that the general power of taxation in the state has been surrendered: Bourgignon B. & A. v. Commonwealth, 1 Penny. 193; Easton Bank v. Commonwealth, 10 Pa. 450; Erie Ry. Co. v. Commonwealth, 66 Pa. 84; Iron City Bank v. Pittsburgh, 37 Pa. 340; Providence Bank v. Billings, 4 Pet. 514; Academy of Fine Arts v. Philadelphia Co., 22 Pa. 496. The state has the power to delegate its right of taxation to a municipality: Durach's App., 62 Pa. 491.

3. There is no contractual relation between the state and the foreign corporations enabled to transact business in the state. The defendant holds no charter from Pennsylvania under which it is vested with any corporate rights. The act of 1873 gave it no new charter. The simple grant of a future privilege

to an existing corporation, without any consideration moving from the grantee, will not be held binding as a contract, unless the terms of the contract show beyond a doubt that it was intended to be irrevocable : Tucker v. Ferguson, 22 Wall. 574; West Wis. R. Co. v. Supervisors, 93 U. S. 595; Church Hospital v. Philadelphia, 24 How. 300.

OPINION, MR. JUSTICE PAXSON :

This case stated is defective in not specifying the class to which the city of Reading belongs. We learn from the opinion of the court below that it is a city of the fifth class, but we cannot incorporate the opinion of the learned judge into the case stated. We might well affirm the judgment upon this ground alone, but inasmuch as it is admitted by counsel on both sides that Reading is a city of the fifth class, we will consider the case upon its merits.

The act of May 24, 1887, P. L. 204, authorizes cities of the fifth class to levy and collect for general revenue purposes an annual license tax on insurance companies, or agencies, and regulates the collection of the same.

The defendant below is a corporation chartered under the laws of the state of Connecticut. It has complied with the provisions of the act of April 4, 1873, P. L. 20, entitled "An act to establish an Insurance Department." It has an agency in the city of Reading. Section 17, of said act of April 4, 1873, provides as follows : "That it shall not be lawful for any city, county, or municipality to impose or collect any license fee or tax upon insurance companies, or their agents authorized to transact business under this act." The city of Reading, by ordinance of councils, has imposed a tax of fifty dollars on every fire insurance company or agency within the city. The only question we are asked to decide is whether section 17 of said act of April 4, 1873, is repealed by the act of 1887. The court below held that it was so repealed, and entered judgment for the plaintiff upon the case stated.

We see no error in this. It was contended in the court below that the act of 1873 was a contract so far as foreign insurance companies were concerned, by which the state agreed not to tax them for the future. This position was abandoned here, however, and very properly, as it was unsound. The exempt-

ing clause of the act of 1873 is general in its terms, and is applicable to foreign and domestic companies alike. The act of 1887 is also general in this respect. While the latter act contains no express repeal, it introduces a new rule upon the subject, and fully supplies the act of 1873. As was well observed by the court below, "the repugnancy between the old and new clauses is total and manifest." It will be noticed that the act of 1887, and the ordinance of the city in pursuance thereof, make no distinction between domestic and foreign insurance companies. The license tax is imposed upon all alike.

The learned judge of the court below has disposed of this question in a clear and well considered opinion, citing a number of authorities to sustain his ruling, in view of which a further discussion of the case by this court is unnecessary.

Judgment affirmed.